UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SWA'DRIAN LEWIS AND<br>KIMBERLY SOWELL | CIVIL ACTION NO. 22-CV-1453 |
| VERSUS | JUDGE SARAH S. VANCE |
| SUSAN HUTSON, ORLEANS PARISH SHERIFF; MARLIN N. GUSMAN, FORMER ORLEANS PARISH SHERIFF; OPSO CAPT. GLENN POWELL; OPSO CAPT. STEPHEN CARTER; OPSO MAJOR BARREA; OPSO LT. ANTHONY FRICANO; OPSO SGT. MARY BLACK; OPSO DEPUTY KEBRINA BADON; OPSO DEPUTY LARON SIMPSON; OPSO DEPUTY KELLY LAUGA; UNKNOWN DEPUTIES 1 AND 2; WELLPATH, LLC; FRANK RATTRAY AND TERRIE DUCOTE | MAGISTRATE JUDGE KAREN W. ROBY<br>*Electronically Filed* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

**SCOFIELD & RIVERA, L.L.C.**

*s/Bryan D. Scofield*
**BRYAN D. SCOFIELD (#19147)**
**JAMES T. RIVERA (#23913)**
**JESSICA W. MARCHAND (#34160)**
P. O. Box 4422
100 E. Vermilion, Ste. 301
Lafayette, LA  70501
(337) 235-5353
E-mail: Bryan@scorivlaw.com
**Attorneys for Wellpath, LLC, Frank Rattray and Terrie Ducote**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing has this date been filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the court's electronic filing system.

Lafayette, Louisiana, this 19th day of July, 2022.

> *s/Bryan D. Scofield*
> **BRYAN D. SCOFIELD - #19147**

**TABLE OF CONTENTS**

I.   PLAINTIFFS' ALLEGATIONS IN THEIR COMPLAINT. . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Motion to Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   Plaintiffs' Constitutional Claims Should be Dismissed . . . . . . . . . . . . . . . . . . . . . 6

          1.   Conditions of Confinement Claims under § 1983 . . . . . . . . . . . . . . . . . . . 7

          2.   Claims Against Ms. Ducote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          3.   Claims Against Mr. Rattray . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. PLAINTIFFS' STATE LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **TABLE OF AUTHORITIES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Carey v. Piphus*,
    435 U.S. 247 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Domino v. Texas Dept. of Crim. Justice*,
    239 F.3d 752 (5 Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Gobert v. Caldwell*,
    463 F.3d 339 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hare v. City of Corinth, Ms.*,
    74 F.3d 633 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Harrington v. Harris*,
    118 F.3d 359 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Treen*,
    759 F.2d 1236 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Griffin-Alexander Drilling Co.*,
    685 F.Supp. 960 (W.D. La. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Petzold v. Rostollan*,
    946 F.3d 242 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Seoane v. Ortho Pharmaceuticals, Inc.*,
    472 F.Supp. 468 (E.D. La. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Taylor v. United States Treasury Dept.*,
    127 F.3d 470 (5 Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thibodeaux v. Bordelon*,
    740 F.2d 329 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Classic*,
    313 U.S. 299 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Varela v. Gonzalez*,
    773 F.3d 704 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Victoria W. v. Larpenter*,
    369 F.3d 475 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*West v. Atkins*,
    487 U.S. 42 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wolcott v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wyatt v. Cole*,
    504 U.S. 158 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES**

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

LSA-R.S. 40:1231.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LSA-R.S. 40:1231.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 12(b)(6) of the Federal Rules of Civil Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

Rule 12(d) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SWA'DRIAN LEWIS AND<br>KIMBERLY SOWELL | CIVIL ACTION NO. 22-CV-1453 |
| VERSUS | JUDGE SARAH S. VANCE |
| SUSAN HUTSON, ORLEANS PARISH SHERIFF; MARLIN N. GUSMAN, FORMER ORLEANS PARISH SHERIFF; OPSO CAPT. GLENN POWELL; OPSO CAPT. STEPHEN CARTER; OPSO MAJOR BARREA; OPSO LT. ANTHONY FRICANO; OPSO SGT. MARY BLACK; OPSO DEPUTY KEBRINA BADON; OPSO DEPUTY LARON SIMPSON; OPSO DEPUTY KELLY LAUGA; UNKNOWN DEPUTIES 1 AND 2; WELLPATH, LLC; FRANK RATTRAY AND TERRIE DUCOTE | MAGISTRATE JUDGE KAREN W. ROBY<br>*Electronically Filed* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**I. PLAINTIFFS' ALLEGATIONS IN THEIR COMPLAINT**

Plaintiffs are Kimberly Sowell, who is allegedly the mother of the deceased, Anthony Hunt, and Swa'drian Lewis, who "is believed" to be "the adult son of . . . Anthony Hunt."[1] Plaintiffs filed suit against Defendants herein and numerous other Defendants arising out of the death of Anthony Hunt, while he was incarcerated at the Orleans Justice Center ("OJC"). Plaintiffs claimed that Anthony Hunt died, because he ingested Fentanyl. Plaintiffs speculate that Mr. Hunt committed suicide, as opposed to accidentally overdosing on Fentanyl.

---

[1] See Plaintiffs' Complaint, ¶¶ 3 and 4 (Doc. 1).

Plaintiffs filed suit against Frank Rattray, Terrie Ducote and Wellpath, LLC ("Wellpath"), claiming that Rattray and Ducote were employees of Wellpath.  Plaintiffs did not allege that the Wellpath Defendants had any involvement with, or duty to search for, the Fentanyl.

Plaintiffs claimed that "Anthony Hunt was arrested after an hours-long stand-off with the NOPD SWAT team based upon an out-of-state warrant" on June 11, 2021.  Mr. Hunt was wanted in Mississippi for murder.  Plaintiffs speculated that Mr. Hunt smuggled Fentanyl into the OJC, because he was not properly scanned by OPSO deputies.  Mr. Hunt was also allegedly placed on lockdown by jail officials until his death 10 days later.[2]  Mr. Hunt allegedly became frustrated as a result of being placed on lockdown and broke the OJC's sprinkler system in his cell on June 21, 2021.  This action flooded his cell, the dayroom and other cells in the pod.  The water was removed from all areas of the jail except Mr. Hunt's cell.[3]

At approximately 7:52 p.m. on June 21, 2021, a deputy brought Mr. Hunt food, and there were rumors that Mr. Hunt "was feeling suicidal."[4]  The deputy notified the Wellpath medical department. Terrie Ducote, who is a Wellpath mental health professional, **immediately responded**. She arrived at Mr. Hunt's cell six minutes later at 7:58 p.m.  According to their Complaint, Ms. Ducote questioned Mr. Hunt concerning whether he felt suicidal, and Mr. Hunt <u>denied being suicidal</u>. However, Mr. Hunt wanted out of his cell.  Ms. Ducote also allegedly "told Mr. Hunt that if he wanted to talk he could let the guards know . . . ."[5]  **Therefore, Plaintiffs alleged that**

---

[2] See Plaintiffs' Complaint, ¶¶ 11-14 (Doc. 1).

[3] See Plaintiffs' Complaint, ¶¶ 14-19 (Doc. 1).

[4] See Plaintiffs' Complaint, ¶ 21 (Doc. 1).

[5] See Plaintiffs' Complaint, ¶ 22 (Doc. 1).

**Wellpath and Ms. Ducote were asked to examine Mr. Hunt, and Ms. Ducote immediately did so six minutes later.**

From that time until the next day, Plaintiffs alleged that OPSO officials forced Mr. Hunt to remain in his flooded cell. Other Defendants noticed that he was "unresponsive, lying on his mattress in the water on the floor of his flooded cell."[6] Thereafter, a deputy "happened to encounter a Wellpath social worker" and asked the social worker "to check on" Mr. Hunt. Defendant, Frank Rattray, who is a mental health professional, promptly did so and arrived at Mr. Hunt's cell at approximately 7:50 a.m. However, the cell door was locked. Plaintiffs alleged that Mr. Rattray delayed "notification to medical for over thirty (30) minutes" while waiting for a deputy to open the cell. That allegation is not true, but assuming it is for purposes of this motion, Plaintiffs acknowledged that a Wellpath emergency response team was called by Mr. Rattray and arrived at 8:25 a.m. The emergency response team immediately "administered Narcan and other treatments to Mr. Hunt." Unfortunately, Mr. Hunt was declared dead after being transported to UMC approximately 9:00 a.m. While treating Mr. Hunt, someone found a white bag of Fentanyl in Mr. Hunt's possession.[7]

**Once again, Plaintiffs alleged that Wellpath and Mr. Rattray were instructed to "check on" Mr. Hunt. Mr. Rattray immediately went to his locked cell and called an emergency treatment team shortly thereafter. Plaintiffs acknowledged that the emergency treatment team provided treatment to Mr. Hunt.[8] There are no allegations that any Defendant knew that Mr.**

---

[6]See Plaintiffs' Complaint, ¶¶ 24-27 (Doc. 1).

[7]See Plaintiffs' Complaint, ¶¶ 33-34 (Doc. 1).

[8]See Plaintiffs' Complaint, ¶¶ 33-34 (Doc. 1).

**Hunt had Fentanyl in his possession or that he had ingested Fentanyl until after treatment began.**

With respect to Wellpath, Plaintiffs alleged "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" which will not support a viable claim.[9] Instead of focusing on factual allegations involving Wellpath with respect to this particular incident, Plaintiffs alleged "on information and belief" conclusory statements about other alleged issues that have nothing to do with this case.[10] For example, Plaintiffs cited the *Jones, et al v. Gusman, et al* Eastern District case where Judge Africk condemned the practices at the OJC.[11] This Court can take judicial notice that Wellpath was not a party to that litigation. In addition, Plaintiffs correctly alleged that Wellpath was hired as "a new medical contractor" after the *Jones* litigation.[12]

Plaintiffs also alleged that Wellpath knew, must have known or should have known of the alleged constitutional violations of Rattray and Ducote.[13] Of course, if Rattray and Ducote did not commit constitutional violations, this conclusory allegation will have no merit.

Plaintiffs also asserted a cause of action against the Wellpath Defendants under state law, claiming the Wellpath Defendants "acted in derogation of their duties as medical professionals, and their treatment of Anthony Hunt was beneath the standard of care in the community."[14] Thus,

---

[9]*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10]See Plaintiffs' Complaint, ¶ 39 (Doc. 1).

[11]See Plaintiffs' Complaint, ¶¶ 50-55 (Doc. 1).

[12]See Plaintiffs' Complaint, ¶ 56 (Doc. 1).

[13]See Plaintiffs' Complaint, ¶ 37 (Doc. 1).

[14]See Plaintiffs' Complaint, ¶¶ 83-90 (Doc. 1).

Plaintiffs have asserted a Louisiana state law claim for medical malpractice. However, Plaintiffs failed to allege completing the process of submitting the medical malpractice claim to the medical review panel as required under Louisiana law.

## II. ARGUMENT

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The court may consider the pleadings, the motion to dismiss, and certain attachments to the motion to dismiss.[15] To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'"[16] In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

When deciding whether a plaintiff has met his or her burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[15] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint are central to her claim.").

[16] *See Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[17] *See Twombly*, 550 U.S. at 555.

[18] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

statements' cannot establish facial plausibility."[19] Plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible."[20]

**B.      Plaintiffs' Constitutional Claims Should be Dismissed**

Plaintiffs filed this suit pursuant to 42 U.S.C. § 1983 and the Eighth and/or Fourteenth Amendments to the United States Constitution. Section 1983 creates a damage remedy for the violation of federal constitutional or statutory rights under the color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[21]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[22]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[23]

---

[19] *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted).

[20] *See Twombly*, 550 U.S. at 570.

[21] 42 U.S.C. § 1983.

[22] *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[23] *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[24] This requires the plaintiff to identify both the constitutional violation <u>and the responsible person acting under color of state law</u>.[25]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[26]

### 1. Conditions of Confinement Claims under § 1983

The Eighth Amendment ensures the safety and wellbeing of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.[27] The proper analysis of each category of claims is the same, because "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."[28] To succeed in an Eighth Amendment violation claim, Plaintiffs must prove that the Wellpath Defendants acted with deliberate indifference, which "is an extremely high standard." [1.] Plaintiffs "'must first prove objective exposure to a substantial risk of serious harm'—in other words, the prisoner must prove a serious medical need. [2.] Second, the prisoner must prove the officials' **subjective knowledge** of this substantial risk. [3.] Third, the prisoner must prove that the officials,

---

[24]*See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[25]*See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[26]*See West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

[27]*See Hare v. City of Corinth, Ms.*, 74 F.3d 633, 639 (5th Cir. 1996).

[28]*See Hare*, 74 F.3d at 643-44.

despite their <u>actual knowledge</u> of the substantial risk, denied or delayed the prisoner's medical treatment. [4.] Finally, the prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm . . . ."[29]

"Importantly, 'disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference.'"[30] It is also well-established that "[u]nsuccessful medical treatment, acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, <u>absent exceptional circumstances</u>." Further, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment."[31] In connection with medical treatment, "deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[32] <u>In this case, there are no allegations that the Wellpath Defendants refused to treat Mr. Hunt, ignored his complaints or intentionally treated him incorrectly.</u>

### 2. **Claims Against Ms. Ducote**

Ms. Ducote was asked to examine Mr. Hunt, and she did so within six minutes. She questioned Mr. Hunt on whether he was suicidal, and Mr. Hunt denied being suicidal. Therefore,

---

[29] *See Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) and cases cited therein.

[30] *See Petzold v. Rostollan*, 946 F.3d at 249 (5th Cir. 2019).

[31] *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

[32] *See Gobert*, 463 F.3d at 346 (5th Cir. 2006); *Domino v. Texas Dept. of Crim. Justice*, 239 F.3d 752, 756 (5 Cir. 2001); *citing Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

based upon Plaintiffs' factual allegations, there was no objective evidence of a substantial risk of serious harm or serious medical need when she examined Mr. Hunt, and Plaintiffs' Complaint fails to prove the first factor of deliberate indifference.

There are no allegations that Ms. Ducote had subjective knowledge that Mr. Hunt was suicidal based upon Mr. Hunt's responses to her questions and because Ms. Ducote had no knowledge Mr. Hunt decided to obtain and ingest Fentanyl. Therefore, the second factor to prove deliberate indifference is not satisfied. Finally, Mr. Hunt voluntarily decided to secretly ingest Fentanyl <u>the next day</u>. Accordingly, there are no factual allegations that Ms. Ducote's examination caused substantial harm as is required to prove deliberate indifference.

The constitutional claims against Ms. Ducote should be dismissed, with prejudice.[33]

### 3. Claims Against Mr. Rattray

The same is true for Mr. Rattray. Regarding the second factor to prove deliberate indifference, Plaintiffs must allege that Mr. Rattray had subjective knowledge of a substantial risk of serious harm to Mr. Hunt. Plaintiffs alleged in paragraphs 33 and 34 that Deputy Powell "asked the social worker to check on Hunt. The social worker sent Defendant Frank Rattray, a mental health professional, to check on Hunt. Defendant Rattray arrived at Hunt's cell at approximately 7:50 a.m." Thus, there are no allegations that Mr. Rattray was told there was a serious condition when he was asked to check on Mr. Hunt. Plaintiffs did not and cannot allege that Mr. Rattray had subjective knowledge that Mr. Hunt possessed and had ingested Fentanyl, which is a banned substance. This

---

[33] Although not pertinent in connection with this Motion to Dismiss, the Wellpath staff performed extensive mental health evaluations of Mr. Hunt when he was first admitted to jail and thereafter. He repeatedly denied being suicidal, prior psychiatric treatment, mental health problems or taking any medication for psychiatric issues. Mr. Hunt also repeatedly denied substance use or abuse.

is not a situation where Mr. Hunt hung himself, cut his wrists or showed some other visible indication that he was committing suicide. Instead, Mr. Hunt had secretly ingested Fentanyl, which no one knew about. Therefore, Plaintiffs cannot satisfy the second factor to prove deliberate indifference, and their constitutional claims should be dismissed against Mr. Rattray.

Plaintiffs also did not allege facts to support the third factor to prove deliberate indifference -- despite having actual knowledge of the substantial risk, Mr. Rattray denied or delayed Mr. Hunt's treatment. Plaintiffs admit that Mr. Rattray went to check on Mr. Hunt, as instructed, but he could not immediately examine Mr. Hunt because the cell door was locked. While Plaintiffs' allegations omit the actual efforts immediately made by Mr. Rattray in treating Mr. Hunt, Plaintiffs agree that Mr. Rattray checked on Mr. Hunt as soon as the cell door was unlocked and called an emergency medical team, who immediately went to his cell and provided emergency treatment. Therefore, Plaintiffs did not allege facts to prove the third factor for deliberate indifference.

The same is true with respect to Wellpath. As noted above, Plaintiffs must identify both the constitutional violation and the responsible person acting under color of state law to prove a constitutional statutory violation under § 1983.[34] Wellpath can only act through its employees and representatives. If Ms. Ducote and Mr. Rattray did not violate the Eighth Amendment, Wellpath didn't either. The other allegations against Wellpath are nothing but conclusory and threadbare recitals of the elements of a cause of action, but Plaintiffs alleged no facts specific to this case. Therefore, Plaintiffs' constitutional violation claims against Wellpath should also be dismissed, with prejudice.

---

[34] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

### III.  PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs' state law claims against the Wellpath Defendants focus on medical services provided to Mr. Hunt at the OJC.  Plaintiffs' state court claims are governed by the Louisiana Medical Malpractice ACT ("LMMA"), LSA-R.S. 40:1231.1, *et seq*.

LSA-R.S. 40:1231.1(13) defines malpractice as follows:

'Malpractice' means any unintentional tort or any breach of contract based **on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely** and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. (emphasis added)

LSA-R.S. 40:1231.8(A)(1)(a) provides in pertinent part:

**All** malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, **shall be reviewed by a medical review panel established as hereinafter provided for in this Section** . . . . (emphasis added)

The LMMA also provides that no action against a healthcare provider covered by its provisions may be "commenced in any court before the claimant's proposed complaint has been presented to a medical review panel . . . ."[35]  The requirement that medical malpractice claims be submitted to a review panel prior to suit is a substantive of rule of law that must be followed by federal courts.[36]

---

[35] See LSA-R.S. 40:1231.8(B)(1)(a)(i).

[36] See *Miller v. Griffin-Alexander Drilling Co.*, 685 F.Supp. 960, 967 (W.D. La. 1988); citing *Seoane v. Ortho Pharmaceuticals, Inc.*, 472 F.Supp. 468, 471 (E.D. La. 1979).

In this case, Plaintiffs failed to allege completion of the medical review panel process. Therefore, Plaintiffs have failed to state a claim upon which relief can be granted, and their state malpractice claim against Wellpath is subject to a dismissal, without prejudice, pursuant to a Rule 12(b)(6) motion.[37]

Further, this Court may consider not only the allegations contained in Plaintiffs' Complaint, but also any documents attached to the Complaint, documents incorporated by reference, and documents that are part of the public record and are subject to judicial notice."[38] Alternatively, this pleading can be converted to a motion for partial summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure. Attached as **Exhibit A** are documents filed by Plaintiffs with the Patient's Compensation Fund requesting a medical review panel in connection with Plaintiffs' claims against Mr. Rattray, Ms. Ducote and Wellpath. In other words, Plaintiffs have already asked the Patient's Compensation Fund to convene a medical review panel to investigate whether malpractice has occurred. That process has only recently begun, and Plaintiffs did not allege that the medical review panel process was completed. Therefore, Plaintiffs again fail to state a claim upon which relief can be granted, and Plaintiffs' state law claims for medical malpractice should be dismissed, without prejudice, to allow the medical review panel to complete its investigation.

---

[37] The medical review panel process is similar to an administrative proceeding. The Fifth Circuit in *Taylor v. United States Treasury Dept.*, 127 F.3d 470, 477 (5 Cir. 1997) held that the plaintiff's failure to exhaust administrative remedies must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[38] See e.g., *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (Directing the courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (Court may consider the Complaint, its proper attachments, documents incorporated by reference, and matter of judicial notice.)

>Respectfully submitted,
>
>**SCOFIELD & RIVERA, L.L.C.**
>
>*s/Bryan D. Scofield*
>**BRYAN D. SCOFIELD (#19147)**
>**JAMES T. RIVERA (#23913)**
>**JESSICA W. MARCHAND (#34160)**
>P. O. Box 4422
>100 E. Vermilion, Ste. 301
>Lafayette, LA  70501
>(337) 235-5353
>E-mail: Bryan@scorivlaw.com
>**Attorneys for Wellpath, LLC, Frank Rattray and Terrie Ducote**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing has this date been filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by operation of the court's electronic filing system.

Lafayette, Louisiana, this 19th day of July, 2022.

>*s/Bryan D. Scofield*
>**BRYAN D. SCOFIELD - #19147**