UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SWA'DRIAN LEWIS | CIVIL ACTION |
| VERSUS | NO. 22-1453 |
| SUSAN HUTSON, ET AL. | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is defendants Frank Rattray and Wellpath LLC's ("Wellpath") motion to dismiss plaintiff's section 1983 claim against them pursuant to Fed. R. Civ. P. 12(b)(6).[1] Plaintiff opposes defendants' motion.[2] Also before the Court are several defendants' unopposed or non-operative motions to dismiss.[3] For the following reasons, the Court grants Rattray and Wellpath's motion to dismiss, and dismisses the remaining motions as moot.

## I. BACKGROUND

This case arises from decedent Anthony Hunt's death in the custody of the Orleans Parish Sherriff's Office ("OPSO"). The facts

---

[1]   R. Doc. 35.
[2]   R. Doc. 37.
[3]   R. Docs. 16, 20 & 21.

relevant to Rattray and Wellpath's motion to dismiss are as follows. Wellpath is a healthcare firm that contracts with OPSO to provide medical services, including mental health treatment, at Orleans Justice Center ("OJC").[4] Defendant Rattray is a mental health practitioner employed by Wellpath.[5] Decedent Hunt was pretrial detainee held at OJC.[6] Plaintiff Swa'Drian Lewis is Hunt's adult son. Hunt was being held on an out-of-state warrant, having been arrested after an hours-long standoff with police.[7] Hunt arrived at OJC and was processed on June 11, 2021.[8] Upon his admittance, Hunt was scanned for contraband with an x-ray machine, though plaintiff alleges that the scan was not as rigorous as required by OJC policy.[9] Plaintiff asserts that, as a result of the subpar screening by OJC officials, Hunt was able to smuggle fentanyl into the jail. He was then housed in cell D1019.[10] The cell is accessible through a solid metal door, with only a small window on the door and a slot for serving food to the detainee.[11]

---

[4] R. Doc. 34 ¶ 6.
[5] *Id.* ¶ 8.
[6] *Id.* ¶ 10.
[7] *Id.*
[8] *Id.* ¶ 11.
[9] *Id.* ¶ 13.
[10] *Id.* ¶ 13.
[11] *Id.*

2

Plaintiff alleges that the cell has no other windows or accessible openings.[12]

On June 21, 2021, ten days after his admittance, Hunt asked OJC correctional officers if he could be let out of his cell.[13] After they refused his request, he broke the water sprinkler in his cell, which caused the sprinkler system to activate and flood Hunt's cell as well as the surrounding cells on pod 1D.[14] A correctional officer subsequently found a small bag of fentanyl floating in the water.[15] The fentanyl was not found in Hunt's cell, the complaint is silent on whether it was attributed to any particular detainee, and plaintiff does not allege that Wellpath or Rattray were made aware of the fentanyl.[16] Hunt was not let out of his cell, even though the sprinkler system flooded the cell with approximately two inches of water.[17] Later that evening, at approximately 7:58 p.m., Hunt advised an individual—either a correctional officer or another inmate—that he was feeling suicidal.[18]

---

[12] *Id.*
[13] *Id.* ¶ 14.
[14] *Id.*
[15] *Id.* ¶ 15.
[16] *Id.*
[17] *Id.* ¶ 18.
[18] *Id.* ¶ 21.

3

Wellpath was notified of the statement and sent Terry Ducote, a mental health practitioner, to check on Hunt.[19] Plaintiff alleges that Hunt was "essentially non-verbal" and dressed only in his underclothes, but when Ducote asked if he was feeling suicidal, Hunt shook his head to indicate that he was not.[20] He once again expressed that he wanted to get out of his cell, but Ducote advised Hunt that she could not help him in that regard.[21]

At approximately 8:30 p.m. that evening, Hunt allegedly collapsed on the floor of his cell.[22] An unnamed individual helping clean up the flooding on pod 1D noticed that Hunt collapsed and advised OJC officials of what had happened.[23] Sergeant Mary Black, the deputy that arrived at Hunt's cell, did not call for assistance.[24] Instead, she poked him with a broom stick through the food slot.[25] According to Sergeant Black, Hunt moved after being poked, and was breathing.[26] Hunt's state did not improve and he spent the remainder

---

[19]  *Id.*
[20]  *Id.*
[21]  *Id.*
[22]  *Id.* ¶ 23.
[23]  *Id.*
[24]  *Id.* ¶ 24.
[25]  *Id.*
[26]  *Id.*

4

of the night lying on his mattress, which was in the water, on the floor of his flooded cell.[27] At approximately 5:56 a.m. the next morning, OJC officers noticed that Hunt was still minimally responsive and would not come to the food slot to retrieve his breakfast.[28] Sergeant Black once again poked Hunt with a broom, and he lifted his head in response.[29] Captain Glenn Powell arrived at pod 1D at approximately 6:56 a.m. and was informed that Hunt was only "partially responsive."[30] Powell then went to Hunt's cell and observed him lying on his mattress.[31] Plaintiff alleges that Hunt did not respond when Powell attempted to interact with him.[32] Powell then coincidentally ran into an unnamed social worker, and he asked the individual to check on Hunt.[33] The social worker did not perform the requested wellness check and instead asked defendant Rattray, a mental health professional, to check on Hunt.[34] Plaintiff does not allege that any information about Hunt's mental or physical state was communicated

---

[27] *Id.* ¶ 26.
[28] *Id.* ¶ 28.
[29] *Id.*
[30] *Id.* ¶ 30.
[31] *Id.* ¶ 31.
[32] *Id.* ¶32.
[33] *Id.*
[34] *Id.*

5

to Rattray. Rattray arrived at Hunt's cell at approximately 7:50 a.m. and, through the small window on the cell door, observed Hunt lying unresponsive on the floor of his flooded cell.[35] Rattray did not immediately call for medical assistance.[36] Instead, he waited until Powell returned to pod 1D approximately thirty minutes later, at which point he called for an emergency medical response team.[37] The emergency response team arrived at approximately 8:25 a.m., noticed fentanyl in Hunt's cell, and administered treatment to Hunt.[38] Unfortunately, they were unable to save Hunt and he was declared dead at 9:00 a.m.[39]

Swa'Drian Lewis, Hunt's adult son, and Kimberly Sowell, Hunt's mother, filed a complaint on May 24, 2022, alleging that all defendants are liable under 42 U.S.C. § 1983 for violation of Hunt's constitutional

---

[35] *Id.* It is unclear whether Hunt was lying directly on the floor, or on his mattress which was in the water.

[36] *Id.*

[37] *Id.* Defendants assert that the thirty-minute delay was the result of Rattray waiting for Powell to return and open the cell so that Hunt could be properly examined. R. Doc. 16-1 at 15. Though the Court does not credit this assertion as fact at this time, it is worth noting that plaintiff has not alleged any facts contradicting defendants' explanation for the delay. Nor does plaintiff dispute the defendants' explanation in his opposition brief.

[38] *Id.* ¶ 33.

[39] *Id.*

rights.[40] They also brought medical malpractice claims against Rattray, Ducote, and Wellpath.[41] The OPSO defendants then moved to dismiss the complaint on the basis that only Swa'Drian Lewis is permitted bring the action.[42] Rattray, Ducote, and Wellpath filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the basis that plaintiffs failed to state a section 1983 claim and that the medical malpractice claim was premature because plaintiffs had not completed the process of submitting the claim to a medical review panel as required by La. Rev. Stat. 40:1231.9(A)(1)(a).[43] Rattray, Ducote, and Wellpath also filed a supplemental motion to dismiss for the same reason as the OPSO defendants.[44] Plaintiff filed an amended complaint on October 11, 2022, which lists Lewis as the sole plaintiff, drops the claims against Ducote, and no longer alleges a medical malpractice claim.[45] Rattray and Wellpath then filed a motion to dismiss the amended complaint, which incorporates and reiterates

---

[40]  R. Doc. 1 ¶¶ 70-82.
[41]  *Id.* ¶¶ 83-90.
[42]  R. Doc. 20.
[43]  R. Doc. 16.
[44]  R. Doc. 21.
[45]  R. Doc. 34.

7

their contentions about the section 1983 claims from their first motion to dismiss.[46] Plaintiff opposes Rattray and Wellpath's motion.[47]

The Court considers the motions below.

## II. MOOT MOTIONS

At the outset, the Court notes that the amended complaint has rendered several of the motions to dismiss as moot. Because the amended complaint no longer lists Sowell as a plaintiff and does not assert a medical malpractice claim, the motions seeking dismissal for those reasons[48] are dismissed as moot.

## III. RATTRAY AND WELLPATH'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is

---

[46] R. Doc. 35.
[47] R. Doc. 37.
[48] R. Docs. 16, 20 & 21.

8

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

### B.     Section 1983 Claim Against Rattray

9

Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under the color of state law. 42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law." *Id.* "Private individuals generally are not considered to act under color of law, *i.e.*, are not considered state actors, and 'private misuse of a state statute does not describe conduct that can be attributed to the State.'" *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941 (1982)). But a private individual can be held liable under section 1983 if he "may fairly be said to be a state actor," which may be because the defendant "has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937. It is not disputed that Rattray and Wellpath are state actors for the purposes of a section 1983 claim.

Plaintiff contends that Rattray violated Hunt's Fourteenth Amendment rights by failing to call for medical assistance in a timely manner. It is axiomatic that "[t]he State's exercise of its power to hold

10

detainees . . . brings with it a responsibility under the U.S. Constitution to tend to essentials of their well-being." *Hare v. City of Corinth (Hare III)*, 74 F.3d 633, 638–39 (5th Cir. 1996) (en banc). Accordingly, pretrial detainees have a right to "constitutional essentials" such as safety and medical care. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). "Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eighth Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). "The failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under § 1983." *Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993) (citing *Rhyne v. Henderson Cty.*, 973 F.2d 386, 391 (5th Cir. 1992)).

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare III*, 74 F.3d at 644–45). A claim falls under the latter theory if the detainee's lawsuit

11

is based on isolated acts or omissions whereby a jail official purportedly deprived the detainee of his Fourteenth Amendment rights to basic needs. *Id.* Under that theory, the plaintiff must show that the jail official acted with subjective "deliberate indifference" under *Farmer v. Brennan*, 511 U.S. 825 (1994). *See Hare III*, 74 F.3d at 636, 648–49 (applying Farmer's Eighth Amendment deliberate indifference test to pretrial detainee's Fourteenth Amendment due process claim against state officials); *cf. Doe v. Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (applying *Farmer*'s Eighth Amendment deliberate indifference test to pretrial detainee's Fifth Amendment due process claim against federal official).[49]

---

[49] Plaintiff asks the Court to disregard binding precedent and hold that, because Hunt was a pretrial detainee and not a convicted prisoner, the proper standard here is objective deliberate indifference and not the subjective indifferent standard laid out in *Farmer v. Brennan*, 511 U.S. 825 (1994)—meaning that Rattray, accordingly to plaintiff, simply *should have* known of an excessive risk of harm to Hunt's health or safety, as opposed to actual knowledge. R. Doc. 37 at 7. But plaintiff himself recognizes that controlling Fifth Circuit decisions apply the subjective deliberate indifference standard to claims by pretrial detainees, despite the claims arising under the Fourteenth Amendment and not the Eighth. *Id.* Accordingly, the Court will not deviate from binding precedent, which commands that the proper standard here is subjective deliberate indifference. *Hare III*, 74 F.3d at 636, 648–49; *Cope v. Cogdill*, 3 F.4th 198, 207 n.7 (5th Cir. 2021) (explaining that the Supreme Court's *Kingsley*

A prison official acts with deliberate indifference when he (1) "knew of" and (2) "disregarded an excessive risk to the [detainee's] health or safety." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (citing *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001)) (alteration in original). To be sure, it is well established that "jailers must take measures to prevent inmate suicides once they know of [a] suicide risk." *Jacobs*, 228 F.3d at 394–95 (citing *Hare v. City of Corinth*, 135 F.3d 320, 328–29 (5th Cir. 1998)). Nevertheless, "negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State." *Id.* at 395. "Accordingly, to be considered deliberately indifferent to a known suicide risk, an officer's acts must constitute at least more than a mere 'oversight.'" *Id.* The officer must be "aware of a substantial and significant risk" that the prisoner will commit suicide and "effectively disregard[ ] it." *Id.*; *see also Vinson v. Clarke Cnty.*, 10 F. Supp. 2d 1282, 1302 (S.D. Ala. 1998) (failure of prison personnel to take steps to prevent inmate from committing suicide in the face of actual

decision, which applied an objective mental-state standard to a pretrial detainee's Fourteenth Amendment claim, is limited to the excessive force context).

13

knowledge of suicide risk can satisfy deliberate indifference) (citing *Greason v. Kemp*, 891 F.2d 829, 835–36 (11th Cir. 1990)).

Plaintiff has not alleged facts which could establish that this incident, tragic though it may be, rises to the level of deliberate indifference on the part of Rattray. As noted above, subjective deliberate indifference requires the defendant to *know* of the medical emergency, not just have awareness of the facts from which one should have drawn the inference of an emergency. *See Gibbs*, 254 F.3d at 549 (stating subjective deliberate indifference requires actual knowledge of the excessive risk to a pretrial detainee's health or safety). Even gross negligence falls short of deliberate indifference. *Hare III,* 74 F.3d at 645. Here, the alleged facts do not suggest that Rattray knew that Hunt had ingested fentanyl, let alone that he was experiencing an overdose when Rattray observed him. Nor does the complaint allege that Rattray was aware that Hunt was suicidal or that Rattray had any knowledge of Hunt's physical or mental state before arriving at his cell. Indeed, the complaint is silent on whether any information was communicated to Rattray before he was asked to check on Hunt.

Though plaintiff has not pleaded facts suggesting that Rattray had actual knowledge of Hunt's medical emergency, he plainly asserts

14

that the "medical emergency was obvious" by virtue of Rattray's observation of Hunt in his semi-responsive state. But this is a conclusory assertion. Absent allegations of facts that Rattray was given information about Hunt's condition, the complaint merely alleges that Rattray arrived at the cell where his observational capacity was limited to what he could ascertain by viewing Hunt through a small window on the locked cell door. Nothing in the complaint states that Rattray called to Hunt and failed to receive a response, or that he otherwise gained subjective knowledge of Hunt's state. Nor is there any allegation that Rattray could unlock the cell door. Thus, there is not a sufficient alleged factual basis to support the inference that Rattray knew Hunt was unconscious and was experiencing a medical emergency before Captain Powell unlocked the cell.

The Court's conclusion that Rattray's observation of Hunt through the cell window does not demand an inference of an imminent medical emergency is supported by the authorities that plaintiff cites. Indeed, the cases cited by plaintiff all involve defendants that knew the detainee was having a medical emergency, either because the jail officials had caused the emergency, or the emergency was patently obvious. *See, e.g.*, *Austin v. Johnson*, 328 F.3d 205, 210 (5th Cir.

15

2003) (where state actors observed the decedent dehydrate and pass out, and they understood the nature of the situation); *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005), *abrogated by Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (where the prison officers had caused the individual's unconsciousness through their use of force); *Est. of Owensby v. City of Cincinnati*, 414 F.3d 596, 600 (6th Cir. 2005) (where the officers' use of force immediately preceded the decedent's asphyxiation and the officers' subsequent failure to call for medical assistance); *Tlamka v. Serrell*, 244 F.3d 628, 631 (8th Cir. 2001) (where correctional officers were told that the inmate was having a heart attack and they witnessed the individual "turn[ing] blue" and experiencing chest spasms).

Further, the Fifth Circuit cases on which plaintiff relies do not warrant a finding of deliberate indifference here. For example, in *Austin v. Johnson*, the defendants observed the decedent dehydrate and pass out during a court-ordered "boot camp," recognized the situation for what it was, and refused to call an ambulance for over an hour and forty minutes. 328 F.3d at 210. The defendants in that case had actual knowledge of the emergency and delayed medical assistance for a much longer period than in this case. Moreover, plaintiff

16

misconstrues *Bias v. Woods*, 288 F. App'x 158 (5th Cir. 2008), and states that the decision is about a prisoner's suicide, but the claim involved a *living* plaintiff's claim stemming from a compression injury and subsequent infection suffered as a result of being restrained in a "suicide blanket" while in a semi-conscious state and then left to lie on the floor of a van for the duration of a 150-mile journey. *Id.* at 159–60. And, the out-of-circuit cases cited by plaintiff, to the extent they do not contradict binding precedent, do not persuade the Court that a different outcome is warranted as they involve defendants who were actually aware of the plaintiff's medical emergency. *See, e.g.*, *Bozeman*, 422 F.3d at 1272 (where the Court found that the evidence was sufficient for a finding that defendants had subjective knowledge of the risk of medical harm to the decedent). Plaintiff therefore offers no applicable authority holding that a cause of action lies under facts comparable to this case. Accordingly, plaintiff's section 1983 claim against Rattray is dismissed for failure to allege facts suggesting that Rattray knew of but nonetheless disregarded an excessive risk to Hunt's health and safety.

**B. Section 1983 Claim Against Wellpath**

Defendants also assert that plaintiff's section 1983 claim against Wellpath must be dismissed because Wellpath can only act through its agents or employees, and no claims have been plausibly alleged against such an individual.[50] Here, plaintiff brought claims against two of Wellpath's agents—Ducote and Rattray—but plaintiff voluntarily dismissed his claim against Ducote, and he has failed to state a claim against Rattray. Accordingly, Wellpath contends that dismissal is warranted because plaintiff has not pointed to any alleged acts by Wellpath employees suggesting that the firm is liable. Plaintiff's only argument in opposition is that because he plausibly stated a claim against Rattray, defendants' motion fails on its own terms.[51] Because the Court has dismissed the claim against Rattray and plaintiff voluntarily dismissed the claim against Ducote, the Court likewise dismisses the section 1983 claim against Wellpath without prejudice to reassert the claim with additional factual allegations suggesting Wellpath's liability.

## III. CONCLUSION

---

[50] R. Doc. 16-1 at 10.
[51] R. Doc. 37 at 11.

For the foregoing reasons, Rattray and Wellpath's second motion to dismiss is GRANTED.[52] The Court DISMISSES plaintiff's section 1983 claims against Rattray and Wellpath, with leave to amend those claims within twenty-one days of this Order. The remaining motions are DISMISSED as MOOT.[53]

New Orleans, Louisiana, this __13th__ day of February, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[52] R. Doc.
[53] R. Docs. 16, 20 & 21.